J-S03008-17

2017 PA Super 106

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAWRENCE DAVID AKRIE, IV | |
| Appellant | No. 215 WDA 2016 |

Appeal from the Judgment of Sentence September 16, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013285-2014

BEFORE:  OLSON, SOLANO and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:                         **FILED APRIL 17, 2017**

Appellant, Lawrence David Akrie, IV, appeals from the judgment of sentence entered on September 16, 2015, as made final by the denial of his post-sentence motion on January 12, 2016.  We hold that the trial court did not abuse its discretion by excluding the specifics of the alleged excessive force used by a police officer in this case and the results of the subsequent investigation.  We further hold that the exclusion of this evidence did not violate Appellant's Confrontation Clause rights.  As we also conclude that the trial court did not abuse its discretion in determining that the jury verdict was not against the weight of the evidence, we affirm.

The trial court summarized the factual background of this case as follows:

> In the early morning hours of May 11, 2014, Appellant visited Serenity Nightclub with his sisters Meredith Akrie, Sierra Akrie, and Iesha Akrie, in the East Liberty/Homewood section of the

* Retired Senior Judge assigned to the Superior Court

City of Pittsburgh. At approximately 3:00 [a.m.], Sierra and Meredith were escorted out of the club by security because the two sisters were physically fighting with another woman. Appellant and Iesha followed their sisters outside.

Several security guards and uniformed City of Pittsburgh police officers were stationed outside the club that evening. Appellant and his sisters were belligerent as they exited the club. Officer [Richard] McClain, one of the City of Pittsburgh police officers stationed outside, attempted to calm the group. He directed them towards their car and requested that they leave the premises, but Appellant and his sisters were very angry[ and] loud, and refused to leave.

Officer McClain continued to try to calm the group, but Appellant yelled at Officer McClain, "Nobody better put their fucking hands on me." Officer McClain responded that would not be necessary, and that Appellant and his sisters should return to their car. Appellant ran towards Officer McClain with his fists clenched, arm raised, and chest puffed out. He stopped within a few feet of Officer McClain and yelled at him, "I don't have to go nowhere. If anybody touches me, I'll mess you up. You can't make me move. Don't touch my sisters, pussy, I'll kick your ass." Officer McClain drew his taser gun and told Appellant to step away from him and go home, or he would deploy the taser. City of Pittsburgh police officer Kevin Kenney was approximately five feet away from Officer McClain, monitoring the situation as it developed.

Officer McClain continued to attempt to calm Appellant and his sister[s], and have them return to their car. However, Appellant and his sisters refused to leave, and Appellant continued to yell and curse at Officer McClain. During this time, the woman whom Sierra and Meredith had been fighting inside the club walked outside. Sierra and Meredith immediately ran towards the woman and resumed their attack on the woman. Officer McClain turned around to intervene in the altercation, and Appellant lunged at Officer McClain's back.

However, Officer Kenney ran between Appellant and Officer McClain before Appellant could make contact. Officer Kenney ordered Appellant to "get back," and pushed Appellant backwards, away from Officer McClain. As Officer Kenney

pushed Appellant backwards, Appellant attempted unsuccessfully to strike Officer Kenney's face with his elbow.

Appellant stumbled backwards a few feet, resumed a fighting stance, put his hands up, and ran towards Officer Kenney. Appellant grabbed Officer Kenney around the waist and legs and attempted to lift him into the air and onto the ground. Officer Kenney grabbed Appellant at the same time, and the two struggled with each other. Appellant was unable to push Officer Kenney to the ground, so he released his grip, stumbled backwards, and immediately resumed his fighting stance.

Officer Kenney decided to arrest Appellant for attempting to strike a police officer, and he approached Appellant to effectuate the arrest. When Officer Kenney approached, Appellant ran away into the parking lot. Officer Kenney gave chase in order to effectuate the arrest, and attempted numerous times to grab Appellant in order to handcuff him, but Appellant continued to evade Officer Kenney.

Shortly thereafter Appellant stopped running, faced Officer Kenney, and attempted to grab Officer Kenney. In response, Officer Kenney struck Appellant, and Appellant grabbed Officer Kenney around his waist and legs, attempting to knock him off his feet a second time. Officer Kenney struck Appellant in the face with his knee, and Appellant finally stopped fighting and dropped to the ground, where Officer Kenney was able to handcuff Appellant. Appellant suffered a lip injury as a result of the knee strike. Once Appellant was handcuffed, he apologized to Officer Kenney, and [advised] Officer Kenney that [the officer] knew Appellant's mother.

City of Pittsburgh police officers stopped the altercation between Appellant's sisters and the unknown woman, and placed Meredith and Sierra in handcuffs. Officer Kenney acknowledged that he knew Appellant's mother, and decided to give Appellant a "break" and issue Appellant a citation for summary level offenses, so he released Appellant that night to seek medical attention for his lip. . . . Appellant filed a complaint with the Pittsburgh Office of Municipal Investigations ([] "OMI") against Officer Kenney for use of excessive force. As a result, Officer Kenney filed the misdemeanor charges originally contemplated against Appellant for his conduct that early morning outside the club.

Trial Court Opinion, 6/22/16, at 8-11 (internal citations omitted).

The procedural history of this case is as follows. On November 14, 2014, the Commonwealth charged Appellant via criminal information with two counts of simple assault,[1] resisting arrest,[2] and disorderly conduct.[3] On May 18, 2015, the Commonwealth moved *in limine* to prohibit Appellant from referencing OMI's investigation into Officer Kenney. On July 28, 2015, the trial court granted in part and denied in part the Commonwealth's motion. Specifically, the trial court permitted Appellant to reference the OMI complaint and the timing thereof. The trial court, however, prohibited Appellant from introducing or referencing the contents (including findings) of OMI's report. On July 30, 2015, Appellant was convicted on all four charges. On September 16, 2015, the trial court sentenced Appellant to an aggregate term of two years' probation. On Monday, September 28, 2015, Appellant filed a post-sentence motion. On January 12, 2016, the trial court denied the post-sentence motion. This timely appeal followed.[4]

_____

[1] 18 Pa.C.S.A. § 2701(a)(3).

[2] 18 Pa.C.S.A. § 5104.

[3] 18 Pa.C.S.A. § 5503(a)(1).

[4] On March 2, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On April 12, 2016, Appellant filed his concise statement. On June 22, 2016, the trial court issued its Rule 1925(a) opinion. Although both of Appellant's issues were included in his concise statement, the trial
*(Footnote Continued Next Page)*

Appellant presents two issues for our review:

1. Did the trial court err in granting the Commonwealth's [m]otion *in* [*l*]*imine* and excluding the results of the internal OMI investigation of the primary officer in this case, Officer Kenney . . . ?

2. [A]re the guilty verdicts in this case against the weight of the evidence in that the verdict[s] should have shocked the conscience of the trial court because the testimony of Officer Kenney and the other officers was uncorroborated by uninterested parties, and the officers had great incentive to tailor their testimony in favor of Officer Kenney and discredit [Appellant]?

Appellant's Brief at 8.

In his first issue, Appellant argues that the trial court erred in excluding the results of OMI's investigation of Officer Kenney. When reviewing

a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Ivy***, 146 A.3d 241, 250 (Pa. Super. 2016) (citation omitted).

Appellant argues that the trial court erred by prohibiting introduction of the OMI investigation results. He avers that the results of the OMI

*(Footnote Continued)* ———————————

court contends that Appellant's weight of the evidence claim is waived because the concise statement was not concise. Although we agree with the trial court that Appellant's concise statement is not a model of clarity, we decline to find waiver on this basis.

investigation showed "Officer Kenney's bias and motive to fabricate evidence against [Appellant]." Appellant's Brief at 20. Therefore, he contends that the evidence was relevant under Pennsylvania Rule of Evidence 401. Appellant also contends that the probative value of the evidence was not "outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.Evid. 403. Finally, Appellant argues that excluding the evidence violated his Confrontation Clause rights.

We conclude that the trial court did not abuse its discretion by determining that the evidence was inadmissible. The probative value of the evidence that the trial court excluded was very small. As noted above, Appellant sought to admit the substance of the OMI investigation report in order to show Officer Kenney's bias and his motivation for fabricating evidence. The contents of the OMI report, including its findings, however, were not central to showing Officer Kenney's alleged bias and motivation for fabricating evidence. Instead, the lynchpin of Appellant's theory at trial was that the filing of the OMI complaint was motivation for Officer Kenney filing more serious charges against Appellant. The substance of OMI's report, what Appellant seeks now to introduce, played no role in Officer Kenney's motivation to file the more serious charges.

Pursuant to the trial court's ruling on the Commonwealth's motion *in limine*, Appellant was permitted to (and did) make all of these arguments. ***See*** N.T., 7/28/15, at 10-11. The trial court specifically permitted Appellant to cross-examine Officer Kenney about the fact that he originally charged Appellant with only summary offenses; however, after Appellant filed a complaint with OMI, Officer Kenney then filed the misdemeanor charges in order to cover for himself. ***See id.*** at 10. Thus, there was little probative value in admitting the substance of the OMI report.

On the other hand, the risk of confusing the issues was great.[5] If OMI's report, and the findings thereof, were admitted into evidence it is likely that the jury would have focused on Officer Kenney's use of excessive force instead of on whether Appellant committed the alleged offenses. We find persuasive the decisions of courts in other jurisdictions which have found the risk of confusing the issues by permitting evidence of the use of excessive force outweighs any probative value such evidence may have in a criminal case. ***E.g.***, ***United States v. Moore***, 2014 WL 7344093, *2 (W.D. Pa. Dec. 23, 2014); ***Washington v. Riojas***, 2014 WL 5362042, *9, 184 Wash.App. 1013 (2014) ("A complete vetting of evidence as to the force used in the arrest had a real potential for creating jury confusion about

---

[5] Appellant argues at great length that the OMI report, and the findings thereof, were not unduly prejudicial. He fails to explain, however, why admission of the OMI report would not confuse the issues for the jury. ***See*** Appellant's Brief at 17-20.

whether the sergeant's use of force mattered."); **New Jersey v. Zack**, 2011 WL 112514, *5 (N.J. Super. Ct. App. Div. Jan. 14, 2011) (*per curiam*) ("Whether the police used excessive force in arresting defendant . . . had the capacity to confuse the issues and mislead the jury, justifying a determination that it was inadmissible."); **California v. Alexander**, 2010 WL 398249, *7 (Cal. Ct. App. Feb. 5, 2010) ("Given the slight, if any, probative value of the evidence of excessive force, and the likelihood of confusion of issues and undue consumption of time, we conclude that the trial court did not err . . . in excluding the evidence."). As the risk of confusing the issues by admitting the OMI report outweighed any probative value of the OMI report, we hold that the evidence was properly excluded under Rule 403. **Cf. Commonwelath v. O'Drain**, 829 A.2d 316, 322 & n.7 (Pa. Super. 2003) (we may affirm the trial court's admission or exclusion of evidence on any basis supported by the record).

Appellant also argues that exclusion of the OMI report violated his Confrontation Clause rights. Whether Appellant's confrontation rights were violated is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary.[6] **Commonwealth v. Yohe**, 79 A.3d 520, 530 (Pa. 2013). As this Court has explained, "the Sixth Amendment of

---

[6] Although a trial court's granting of a motion *in limine* is subject to an abuse of discretion standard of review, **Ivy**, 146 A.3d at 250 (citation omitted), an error of law constitutes an abuse of discretion. **Nat'l Cas. Co. v. Kinney**, 90 A.3d 747, 753 (Pa. Super. 2014) (citation omitted). Thus, we ultimately employ a *de novo* standard of review.

the United States Constitution provides that, 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]' U.S. Const. Amend. VI. This protection has been incorporated into the Fourteenth Amendment and thus is applicable in state court prosecutions." *Commonwealth v. Brown*, 139 A.3d 208, 212 (Pa. Super. 2016), *appeal granted on other grounds*, 2016 WL 7235309 & 2016 WL 7235589 (Pa. Dec. 14, 2016) (ellipsis in original; certain citation omitted).

In the context of cross-examining a testifying witness, this Court has explained that a defendant's right to confrontation

> means more than being allowed to confront the witness physically. Indeed, the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Of particular relevance here, [the Supreme Court of the United States has] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . [T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Commonwealth v. Bozyk*, 987 A.2d 753, 756 (Pa. Super. 2009) (internal quotation marks and citations omitted; emphasis removed).

Appellant relies upon this Court's statement in **Bozyk** that "[t]he pertinent case law permits a police witness to be cross-examined about misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate." Appellant's Brief at 22, *quoting* **Bozyk**, 987 A.2d at 757. In this case, as noted above, the trial court permitted Appellant to cross-examine Officer Kenney regarding his motivation in testifying at trial. Specifically, the trial court permitted Appellant to cross-examine Officer Kenney on whether he was testifying against Appellant because Appellant filed an OMI complaint against Officer Kenney. In other words, the trial court permitted Appellant to cross-examine Officer Kenney regarding misconduct insofar as it related to the underlying criminal charges. The trial court exercised its broad latitude, however, in limiting that cross-examination to avoid confusion of the issues by not permitting Appellant to cross-examine Officer Kenney about the findings of the report.

Appellant also cites **Commonwealth v. Sullivan**, 402 A.2d 1019 (Pa. 1979), in support of his argument that his Confrontation Clause rights were violated. **Sullivan**, however, is distinguishable from the case at bar. In **Sullivan**, the investigation into the officer's actions occurred prior to trial; however, the outcome of that investigation depended upon whether the defendant was convicted or acquitted at trial. In other words, the police officer would be suspended if the defendant were acquitted and would be

exonerated if the defendant were convicted. *See id.* at 1020. In this case, the OMI investigation fully concluded prior to trial. Thus, Officer Kenney's discipline did not depend on the outcome of Appellant's criminal trial. Furthermore, as noted above, in this case the trial court permitted Appellant to cross-examine Officer Kenney regarding his motivation for testifying against Appellant. Accordingly, we hold that Appellant's Confrontation Clause rights were not violated. Therefore, Appellant is not entitled to relief on his first claim of error.

In his second issue, Appellant argues that the verdict in this case was against the weight of the evidence. A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *In re J.B.*, 106 A.3d 76, 97 (Pa. 2014) (citation omitted). Appellant properly preserved his weight of the evidence claim by raising the issue in his post-sentence motion.

"[A] new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Commonwealth v. Tejada*, 107 A.3d 788, 795-796 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015) (internal alteration and citation omitted). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, this Court determines whether the trial court abused

- 11 -

its discretion in reaching whatever decision it made on the motion[.]"

***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

Appellant argues that the verdict was against the weight of the evidence because the police officers' testimony at trial was not credible. As this Court has explained:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa. Super. 2012), *appeal denied*, 64 A.3d 630 (Pa. 2013) (citation omitted).

In this case, the trial testimony was not so unreliable and/or contradictory as to make the verdict mere conjecture. The testimony of all of the Commonwealth's witnesses was generally consistent. Furthermore, Appellant fails to explain how the testimony of the two non-police officer witnesses who testified on behalf of the Commonwealth was tainted. Instead, Appellant focuses only on the testimony of the police officers.

Moreover, Appellant's argument that the police officers who testified in this case had a greater interest in the outcome of this case than he did is without merit. Appellant was facing jail time when he testified at trial and the jury determined that his testimony was as biased, if not more biased than, the police officers' testimony. The trial court, who viewed the

witnesses' demeanors at trial, determined that the verdict did not shock its sense of justice. We ascertain no abuse of discretion in this determination.

In sum, we hold that the trial court did not abuse its discretion by excluding the specifics of the alleged excessive force used by the police officer in this case and the results of the subsequent investigation. We further hold that the exclusion of this evidence did not violate Appellant's Confrontation Clause rights. As we also conclude that Appellant is not entitled to relief on his weight of the evidence claim, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2017