J-S52014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CURTIS JOHN MULHERN, | : | |
| | : | |
| Appellant | : | No. 1546 MDA 2016 |

Appeal from the Judgment of Sentence September 1, 2016
in the Court of Common Pleas of Lackawanna County,
Criminal Division, No(s):  CP-35-CR-0002478-2015

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:               **FILED OCTOBER 18, 2017**

Curtis John Mulhern ("Mulhern") appeals from the judgment of sentence imposed following his convictions of firearms not to be carried without a license and criminal attempt to commit illegal sale or transfer of a firearm.  *See* 18 Pa.C.S.A. §§ 6106(a)(1), 901.  We affirm.

The trial court set forth the relevant underlying facts as follows:

On August 31, 2015[,] [Mulhern] went to the home of Vincent Hutchinson [("Hutchinson")], which is located in the city of Scranton.  He inquired about trading his .32 caliber handgun for three (3) bricks of heroin.  (N.T. 4/13/16 at pg. 36-37).  Taking the witness stand, [] Hutchinson stated that at the time he was approached by [Mulhern], he was working as confidential informant for the Lackawanna County Drug Task Force.  [] Hutchinson stated he had been working with county detectives for two (2) years.  (N.T. 4/13/16 at pg. 33).  [] Hutchinson testified that he had two prior criminal convictions[:]  a conviction for receiving stolen property from 2008 and a conviction for drug paraphernalia from 2013.  (N.T. 4/13/16 at pg. 31).  He testified he was paid fifty dollars ($50) in compensation for his work as a CI in [Mulhern's] case[;] in the past[,] however[,] he received a reduction of charges.  (N.T. 4/13/16 at pg. 33).  [] Hutchinson stated that he had been a

drug addict for seventeen (17) years and credited the detectives with saving his life and helping him get into AA and rehab. (N.T. 4/13/16 at pg. 35).

[] Hutchinson testified he contacted Dunmore Detective Corey [Condrad ("Detective Condrad")] and told him about [Mulhern's] inquiry. (N.T. 4/13/16 at pg. 37). [Hutchinson] testified he met with Detective [Condrad] at the Dunmore Police Station, and he was "consensualized" to facilitate a recorded phone call between he and [Mulhern]. (N.T. 4/13/16 at pg. 37-38). [Hutchinson] was searched upon arrival at the Dunmore Police Station, as per department protocol, with no contraband found. (N.T. 4/13/16 at pg. 39-40).

At that point[,] a phone call was placed and recorded between [] Hutchinson and [Mulhern]. (N.T. 4/13/16 at pg. 41). The police were able to intercept and record the following conversation between the two:

[Detective Condrad]: This is [Detective Condrad] with the Dunmore Police Department. Certification number A-4912. This phone call is in reference to case number 15-1291T. Intercept number 57C-15-210. The CI will be placing a phone call to [] Mulhern at phone number (410) 336-[****]. The time now is approximately 1225 hours. The date [is] August 31st, 2015.

[Mulhern]: Hello?

[Hutchinson]: Yo, Curt.

[Mulhern]: Yo.

[Hutchinson]: Alright, listen. Can you talk or no? You good?

[Mulhern]: Yeah.

[Hutchinson]: Alright. Listen. I'm with my boy now. But due [*sic*], he does not wanna come in there. So, this is what we're gonna do. So, I made it a lot easier for the both of you guys. The both of you guys are fucking nuts. Alright. I'm coming back down [to] the house. We'll walk like two blocks down the street. I'll get the, you know, the

three you want, the three things. The bricks. And then fucking I'll jump in the car with him and then you go one way fucking and then I'll jump in the car with him and go the other way with the gun so this way everybody's happy. So []is that, is that?

[Mulhern]: So, wait. What again?

[Hutchinson]: I'm gonna meet you at the house. You know what I mean? So everything is good. We'll put the fucking, the gun in the backpack so this way we look like college kids. We'll walk down a couple of blocks. He'll pull up cause he doesn't wanna pull in there cause it's hot down there. It's like there's cops. You know? A black guy in that neighborhood. And then I'll just–he'll just hand [m]e the three bricks. He'll see me put it in your hand and then fucking I'll hop in the car with you with the gun.

[Mulhern]: Alright just come-alright just come here then.

[Hutchinson]: Alright. I'll be right there in about-give me like five, ten minutes and then we'll go and get it done. Alright?

[Mulhern]: Alright.

[Hutchinson]: Yo. Do you have that point still for me so I can get high with ya?

[Mulhern]: Yeah.

[Hutchinson]: Alright. You're my man, brother. Later, love ya.

[Mulhern]: Alright. Bye.

[Hutchinson]: Alright. Bye.

Commonwealth Exhib[i]t #3.

Following the telephone call, Detective [Condrad] dropped [] Hutchinson off a few blocks from his house to facilitate a meeting with [Mulhern]. (N.T. 4/13/16 at pg. 44). [] Hutchinson walked from the detective's car to [Mulhern's] house.

(N.T. at pg. 44). He stated he and [Mulhern] walked five or six blocks before being arrested by Detectives [Condrad] and [Harold] Zech, as well as other members of the Drug Task Force. (N.T. 4/13/16 at pg. 45). [Mulhern] was placed into a different patrol car than [] Hutchinson. (N.T. 4/13/16 at 45). [] Hutchinson stated that he was driven to a spot few blocks away, searched again, and paid fifty dollars ($50) for his work and released. (N.T. 4/13/16 at pg. 46).

Next, Detective [] [Condrad] took the stand. (N.T. 4/13/16 at pg. 68). Detective [Condrad] stated that on August 31, 2015, [] Hutchinson made contact with him and advised [that Mulhern] wished to trade his .32 caliber handgun for three (3) bricks of heroin. (N.T. 4/13/16 at pg. 72). Detective [Condrad] stated that he then picked up [] Hutchinson and brought him to the Dunmore Police Station, where he searched [] Hutchinson. (N.T. 4/13/16 at pg. 72). In addition, he received permission from [] Hutchinson to intercept and record a conversation between the [Hutchinson] and [Mulhern]. (N.T. 4/13/16 at pg. 72). He then recorded a phone call between the two men, wherein [Mulhern] confirmed he still wished to trade his gun for heroin. (N.T. 4/13/16 at pg. 75). Detective [Condrad] instructed [] Hutchinson to have [Mulhern] carry the gun in a backpack while they walked to the meet location for the safety of bystanders and all those involved. (N.T. 4/13/16 at pg. 75). Detective [Condrad] then transported [] Hutchinson back to his neighborhood so he could meet with [Mulhern]. (N.T. 4/13/16 at pg. 76).

At that point, a perimeter was set up by the arrest team. (N.T. 4/13/16 at pg. 76). While walking from [his] home to the meet location, [] Hutchinson was carrying an audio transmitter which allowed the detectives to listen to the conversation between [Mulhern] and [] Hutchinson. (N.T. 4/13/16 at pg. 76-77). A couple of blocks from [Mulhern's] house, the officers arrested [Mulhern] and [] Hutchinson. (N.T. 4/13/16 at pg. 77). A .32 caliber Thames Arm Revolver and five (5) rounds of ammunition were located in the backpack [Mulhern] was carrying. (N.T. 4/13/16 at pg. 77). Detective [Condrad] stated [] Hutchinson was released from custody a couple of blocks from the point of arrest and paid fifty dollars ($50). (N.T. 4/13/16 at pg. 83).

After being taken into custody and transported back to the Dunmore Police Station, Officer Richardson of the Dunmore Police Department checked the database to confirm that

[Mulhern] did not have a license to carry a concealed firearm. (N.T. 4/13/16 at pg. 84).

Detective Tom Davis was the next witness to testify. (N.T. 4/13/16 at pg. 89). He testified that he test[-]fired the .32 caliber Thames Arm Revolver on April 11, 2016. (N.T. 4/13/16 at pg. 91-92). He performed a physical inspection of the firearm, dry fired the gun, and then shot two (2) of the recovered rounds of ammunition into a target. (N.T. 4/13/16 at pg. 93-94). His inspection revealed that the .32 caliber Thames Firearm was fully operational. (N.T. 4/13/16 at pg. 96).

[Mulhern] then testified as a witness in his own defense. (N.T. 4/13/16 at pg. 109). He testified it was [] Hutchinson who solicited him to sell his gun in exchange for heroin, that it was [] Hutchinson who set up the deal between an alleged drug dealer and [Mulhern] to trade the gun, and that it was [] Hutchinson who pushed for the deal to happen. (N.T. 4/13/16 at pg. 114-120). He testified that at one point he exclaimed "F this, I'm not doing this," and turned around to walk away. (N.T. 4/13/16 at pg. 122). He testified as he had turned and walked in the opposite direction, [] Hutchinson stated "You have to or he said he's going to kill my daughter, Dude." (N.T. 4/13/16 at pg. 122). [Mulhern] claims that he changed direction and resumed the plan to sell the gun out of fear for the safety of [] Hutchinson's daughter. (N.T. 4/13/16 at pg. 123). He further testified at the time of his arrest he saw [] Hutchinson's daughter in the back of one of the patrol cars on the scene of the arrest. (N.T. 4/13/16 at pg. 124).

In rebuttal, the Commonwealth recalled Detective [Condrad] to the stand. (N.T. 4/13/16 at pg. 129). He testified [that Mulhern] and [] Hutchinson were kept under constant surveillance. (N.T. 4/13/16 at pg. 130). He testified [Mulhern] never deviated his course or turned around or attempted to walk in another direction. (N.T. 4/13/16 at pg. 130). Finally, he testified that neither [] Hutchinson's daughter nor any other female was on the scene at the time of [Mulhern's] arrest. (N.T. 4/13/16 at pg. 130).

Trial Court Opinion, 1/27/17, at 2-7.

Following a jury trial, Mulhern was found guilty of the above-mentioned crimes. The trial court sentenced Mulhern to an aggregate prison term of twenty to forty months, followed by one year of probation. Mulhern filed a *pro se* Notice of Appeal. This Court subsequently ordered the trial court to hold a **Grazier**[1] hearing to determine whether Mulhern wished to proceed *pro se* on appeal. The trial court held a **Grazier** hearing on November 4, 2016, after which it appointed Mulhern counsel for his appeal. Thereafter, on December 7, 2016, the trial court ordered Mulhern to file a Pa.R.A.P. 1925(b) concise statement within twenty-one days. Mulhern filed a Rule 1925(b) Concise Statement on December 30, 2016,[2] and the trial court issued an Opinion.

On appeal, Mulhern raises the following questions for our review:

1. Did [Mulhern] sustain his burden of proof on the defense of entrapment such that his convictions should be overturned and all charges dismissed?

2. Did the trial court abuse[] its discretion or err as a matter of law by precluding [Mulhern] from examining the confidential informant, [] Hutchinson, on the nature of his prior criminal offenses[,] and the victims thereof[,] where the Commonwealth had opened the door to such examination?

Brief for Appellant at 5.

Prior to addressing Mulhern's claims, we must determine whether he

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[2] While the Concise Statement was dated December 28, 2016, it was docketed on December 30, 2016.

properly preserved them for our review. It is well-settled that when a trial court orders an appellant to file a Rule 1925(b) concise statement, he must comply to preserve his claims on appeal. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Where "an appellant in a criminal case was ordered to file a [s]tatement and fails to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand for the filing of a [s]tatement *nunc pro tunc* and for the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3). However, "[w]hen counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues[,] we need not remand and may address the merits of the issues presented." *Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa. Super. 2012).

Here, on December 7, 2016, the trial court ordered Mulhern to file a Rule 1925(b) concise statement within twenty-one days. Mulhern's counsel was *per se* ineffective for filing the Concise Statement on December 30, 2016. However, because the trial court addressed the claims in Mulhern's Concise Statement in its Opinion, we will address the merits of Mulhern's issues. *See id.*

In his first claim, Mulhern contends that his convictions should be overturned because he established his entrapment defense as a matter of law. Brief for Appellant at 13, 22. Mulhern argues that he was induced by Hutchinson's incessant requests to sell a firearm for heroin they could

mutually use. ***Id.*** at 14. Mulhern asserts that Hutchinson solicited drugs from him and suggested the sale of a firearm to a collector known to Hutchinson so that they could obtain heroin. ***Id.*** at 18-19; ***see also id.*** at 18 (wherein Mulhern points out that he and Hutchinson were heroin addicts, friends, and neighbors). Mulhern claims that he was illegally induced to leave his home with the firearm by Hutchinson and Detective Condrad. ***Id.*** at 19-20, 21; ***see also id.*** at 16-18 (noting that appeals to friendship between a confidential informant and defendant demonstrated methods of persuasion which create a substantial risk that a defendant would purchase drugs as a favor to the informant).

The Crimes Code defines the defense of entrapment, in relevant part, as follows:

> **(a) General rule.--**A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> (1)  making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>
> (2)  employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b) Burden of proof.--**Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313.

Pennsylvania courts apply an "objective" test for entrapment[.] …

[T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other *indicia* of a predisposition to commit crime.

… [T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute.

Where police do no more than afford appellant an opportunity to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. Thus, the availability of the entrapment defense under the statute does not preclude the police from acting so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation.

… [T]he determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law.... Thus, after the defense of entrapment has been properly raised, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense.

> Importantly, the court may also consider, based upon the operative facts, whether it can reject an entrapment defense as a matter of law.
>
> Operative facts are …[t]hose that are necessary for [a]ppellant to prove by a preponderance of the evidence that he was entrapped. Under the objective test for entrapment, these would be facts that go to the course of conduct of a government officer or agent that would fall below standards to which common feelings respond, for the proper use of government power.

*Commonwealth v. Marion*, 981 A.2d 230, 238–39 (Pa. Super. 2009) (citations, quotation marks, and some paragraph breaks omitted).

Upon review of the record and testimony, the operative facts as to whether Mulhern and Hutchinson are friends, and who initiated the sale of the firearm, are in dispute. *Compare* N.T., 4/13/16, at 35-37 (wherein Hutchinson testified that Mulhern repeatedly came to his house to talk, and that on the day in question, Mulhern came to his house to inquire whether Hutchinson knew anyone who would trade three bricks of heroin for a firearm), *with id.* at 114-16 (wherein Mulhern testified that Hutchinson would always come to his house, and that Hutchinson solicited Mulhern about selling his firearm for heroin). Thus, the trial court submitted the entrapment defense for consideration to the jury for it to resolve the disputed facts and weigh the relationship in light of all the communications and contacts. *See Commonwealth v. Mance*, 619 A.2d 1378, 1381 (Pa. Super. 1993) (holding that the entrapment defense was properly submitted to jury where operative facts as to whether the defendant was induced into

participating in the scheme were disputed). After an instruction on the entrapment defense, the jury rejected the entrapment defense and convicted Mulhern on the charged firearm offenses. *See Commonwealth v. Talbert*, 129 A.3d 536, 543 (Pa. Super. 2015) (noting that the fact-finder was free to believe all, part, or none of the evidence presented at trial).

Moreover, contrary to Mulhern's assertions, the actions taken by Hutchinson and the police did not establish entrapment as a matter of law. *See Commonwealth v. Weiskerger*, 554 A.2d 10, 14 (Pa. 1989) (noting that to prevail on an entrapment defense as a matter of law, the defendant must prove that the evidence of entrapment was so overwhelming that there could be no other conclusion). Here, there was no evidence that Hutchinson was manipulative, attempted to overcome Mulhern's will, or made false representations to Mulhern. Indeed, Mulhern testified that he had been using opiate drugs for two years and had used drugs the day before he was arrested. N.T., 4/13/16, at 112-13. Moreover, Mulhern had ample opportunity to not participate in the drug scheme, to notify authorities, or just to sever his relationship with Hutchinson. Mulhern declined to do so. Given these facts, we conclude the police simply gave Mulhern an opportunity to trade his firearm for heroin, and the evidence was not sufficiently outrageous to support an entrapment defense as a matter of law. *See Marion*, 981 A.2d at 241 (noting that even where the informant used his friendship with appellant to induce the sale of drugs, the case is entirely

devoid of any further egregious conduct to constitute entrapment as a matter of law as police did not induce the crime, but merely afforded the appellant an opportunity to sell drugs); ***Commonwealth v. Zingarelli***, 839 A.2d 1064, 1075 (Pa. Super. 2003) (concluding that the police's conduct in providing an opportunity without attempting to overcome appellant's reason does not rise to level of outrageousness necessary to find entrapment as matter of law). Accordingly, Mulhern's first claim is without merit.

In his second claim, Mulhern contends that the trial court abused its discretion by precluding him from examining Hutchinson, a paid informant, on the nature and victims of his prior criminal offenses during cross-examination. Brief for Appellant at 22, 25-26. Mulhern argues that this evidence was relevant and probative as Hutchinson had portrayed himself as an individual who was saved by detectives from his drug addiction, and thus vouched for his own credibility and character. ***Id.*** at 22. Mulhern asserts that attacking Hutchinson's credibility was central to his entrapment defense. ***Id.*** at 22, 25.

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Akrie***, 159 A.3d 982, 986–87 (Pa. Super. 2017) (citation omitted).

The trial court addressed Mulhern's claim as follows:

[Mulhern argues that] the [trial c]ourt abused its discretion or erred as a matter of law by precluding [Mulhern] from examining the confidential informant, [] Hutchinson, on the nature of his prior criminal offenses and his victims, alleging the Commonwealth had opened the door to such examination. The Commonwealth introduced evidence that [] Hutchinson had two prior criminal convictions[:] a conviction for receiving stolen property from 2008 and a conviction for drug paraphernalia from 2013. (N.T. 4/13/16 at pg. 31). On cross-examination, defense counsel wanted to ask [] Hutchinson who the victim of his conviction for receiving stolen property was. The Commonwealth objected and th[e trial c]ourt sustained the objection. (N.T. 4/13/16 at pg. 49-56). Under the Pennsylvania Rules of Evidence a prior conviction is *per se* admissible for the purpose of attacking credibility if the conviction "involved dishonesty or false statement." Pa.R.E. [] 609(a). The only exception to this rule is where "a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect." Pa.R.E. [] 609(b). Here, the Commonwealth concedes [] Hutchinson's conviction for receiving stolen property can be properly admitted as evidence of *crimen falsi*. However, the court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403. Whether the identification of the victim [of] [] Hutchinson's crime is admissible is a question of relevancy. As such, th[e trial c]ourt determined that the introduction of [] Hutchinson's *crimen falsi* was properly limited in scope to the date and type of offense and the introduction of any other information would tend to confuse the issues at hand and mislead the jury. Therefore, the evidence was inadmissible and this issue is without merit and should be denied.

Trial Court Opinion, 1/27/17, at 8-9.

We agree with the sound reasoning of the trial court, and conclude that it did not abuse its discretion in denying Mulhern's request. **See id.**;

*see also Commonwealth v. Baez*, 720 A.2d 711, 724-25 (Pa. 1998) (concluding that the trial court did not abuse its discretion in limiting evidence regarding an eyewitness's abuse of cocaine, as such evidence "would have served to unduly distract the attention of the jury from the main inquiry[,] and required the ascertainment of an unnecessary quantity of subordinate facts[.]" (quotation marks omitted)); *Akrie*, 159 A.3d at 988 (noting that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant...." ) (citation omitted)).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2017