**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL PAUL RAMP | : | |
| | : | |
| Appellant | : | No. 122 MDA 2024 |

Appeal from the Judgment of Sentence Entered December 21, 2023
In the Court of Common Pleas of York County
Criminal Division at CP-67-CR-0000043-2023

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED: OCTOBER 22, 2024**

Michael Paul Ramp (Appellant) appeals from the judgment of sentence imposing one year of probation after a jury convicted him of harassment under 18 Pa.C.S. § 2709(a)(4).  We affirm.

*Factual and Procedural History*

On December 12, 2022, police officers responded to a residence in York, Pennsylvania, after receiving a report of a domestic incident involving Appellant and his mother.  The trial court explained that when officers arrived,

> [Appellant] had left the residence and was seen walking northbound towards Mount Rose Avenue.  Officer Angel Rivera, the affiant in this case, and another officer made contact with [Appellant] at the intersection of Mount Rose Avenue and Lancaster Avenue.
>
> … [Appellant] appeared upset and seemed to be under the influence.  Through further interaction with [Appellant], [o]fficers observed [Appellant] become visibly upset, start crying, and begin talking to [the o]fficers about his mental health.  At that time, Sergeant [Adam] Garman, an[] officer on the scene at the

residence, radioed to Officer Rivera[,] indicating that [Appellant's] mother and a friend of [Appellant] had mentioned [Appellant] making threatening remarks to them, and additionally [] making suicidal statements. At that point, Officer Rivera began asking [Appellant] if he had made any suicidal statements, which [Appellant] denied. [Appellant] then went on to state that he just wanted to go home, go to sleep, and never wake up. Officer Rivera testified that when someone makes statements like that, it is protocol to detain the individual and seek an involuntary mental health commitment.

Officer Rivera asked [Appellant] if he wanted to go to the hospital, to which [Appellant] responded that he "just wanted to go home." While this conversation was occurring between [Appellant] and Officer Rivera, Sergeant Garman was making contact with a co-responder to seek guidance on the appropriateness of an involuntary commitment for [Appellant]. While waiting on confirmation regarding the potential commitment, Officer Rivera continued to have an open conversation with [Appellant] regarding [Appellant's] mental health. At some point, the co-responder confirmed that there was enough evidence to detain [Appellant] for an involuntary mental health commitment. This was then communicated to [Appellant], who responded that he was not going to the hospital. Around that time, [Appellant's] demeanor started to change ….

While [Appellant] was being detained, he made many derogatory comments about various officers on the scene. Officer Rivera testified that the majority of the comments made by [Appellant] were generalized comments such as "I know where you live." Once Sergeant Garman arrived on the scene, however, [Appellant] began making specific remarks regarding Sergeant Garman and his family. Officer Rivera testified that [Appellant] began making comments such as, "I know your wife and daughter"; "I know you guys like to go to the swimming pool in Manchester"; and "watch what pool your pussy gets in because it will get wiped;" etc.

Trial Court Opinion (TCO), 3/21/24, at 1-3 (citations to notes of testimony omitted).

In addition to harassment, the Commonwealth charged Appellant with terroristic threats and disorderly conduct.[1]  The Commonwealth withdrew the disorderly conduct charge prior to trial, which began on December 20, 2023. On December 21, 2023, the jury found Appellant guilty of harassment and not guilty of terroristic threats.  The trial court sentenced Appellant the same day.[2]

Appellant filed a timely notice of appeal and court-ordered concise statement of errors pursuant to Pa.R.A.P. 1925(b).  He presents the following question for review:

> Did the trial court abuse its discretion in limiting [Appellant's] cross-examination of the Commonwealth's principal witness[, Officer Rivera,] as to the precise nature of the statements [Appellant] made[,] where the examination would have probed the key matter in the case: whether [Appellant's] statements were truly threatening?

Appellant's Brief at 4.

*Applicable Law*

We review Appellant's claim for an abuse of discretion.  It is "well-established that the scope and limits of cross-examination are within the trial court's discretion and the court's rulings thereon will not be reversed in the absence of a clear abuse of discretion or an error of law."  ***Kearns by Kearns***

---

[1] 18 Pa.C.S. §§ 2706(a)(1) and 5503(a)(3).

[2] In addition to sentencing Appellant to a year of probation, the court ordered Appellant to have no contact with Sergeant Garman or his family, and complete a mental health evaluation and comply with treatment recommendations.

*v. DeHaas*, 546 A.2d 1226, 1228–29 (Pa. Super. 1988) (citations omitted). "Moreover, it is within the trial court's sound discretion to limit cross-examination which touches on collateral matters." *Id.* Our Supreme Court has reiterated that a defendant's "confrontation right is not absolute. It guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Commonwealth v. Rogers*, 250 A.3d 1209, 1216 (Pa. 2021) (citation omitted). In addition,

> [w]hen the obvious purpose of cross-examination is to develop defendant's own case, a ruling by the trial judge to limit cross-examination is not an abuse of discretion. Furthermore, when a trial court so limits cross-examination, its ruling should only be reversed when it precludes the cross-examiner from affirmatively producing such evidence during his own case-in-chief.

*Kearns by Kearns*, 546 A.2d at 1230 (citations and quotation marks omitted).

The jury convicted Appellant of a single offense, harassment, defined as "when, with intent to harass, annoy or alarm another, the person … communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures …." 18 Pa.C.S. § 2709(a)(4); *see Commonwealth v. Walls*, 144 A.3d 926, 930 (Pa. Super. 2016) (finding evidence sufficient to sustain a harassment conviction under Section 2709(a)(4) where the defendant shouted at an assistant district attorney "that she caused his grandmother's death and she should be next").

"An intent to harass may be inferred from the totality of the circumstances." **Commonwealth v. Cox**, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted). The harassment statute defines "communicates" as "[c]onvey[ing] a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means …." 18 Pa.C.S. § 2709(f). The General Assembly has not defined "obscene" or "threatening." **See Commonwealth v. Hanner**, No. 880 WDA 2022, unpublished memorandum at *3 (Pa. Super. filed Jul. 13, 2023).[3]

*Parties' Arguments*

Appellant does not discuss the statutory elements of his harassment conviction, *i.e.*, that with the "intent to harass, annoy or alarm," he communicated threatening or obscene words or language. **See** 18 Pa.C.S. § 2709(a)(4). Rather, Appellant focuses solely on the "threatening" component of the statute. He argues the trial court "infringed [on his] right to cross-examine the key witness against him on the most important issue for the jury: whether the statements [Appellant] made were truly threatening so as to establish crucial elements of the charged offenses [*sic*]." Appellant's Brief at 13. Appellant says he "sought to establish that [he] never said anything about shooting, punching, kicking, or otherwise inflicting actual violence on anyone." **Id.** at 16. He claims his "proffered cross-examination would have gone

---

[3] This Court may cite our unpublished decisions filed after May 1, 2019 for persuasive value. **See** Pa.R.A.P. 126(b).

- 5 -

directly to the heart of the matter: whether [Appellant] made any true threats." *Id.* at 19. Appellant claims the jury "zeroed in on this exact question where it explicitly requested a legal definition of 'threat' during deliberations." *Id.* (citing N.T., 12/21/23, at 236).

Appellant concedes his statements "were captured on the video the jury viewed," but asserts "there is no substitute for *confronting* a witness with deficiencies in a case."[4] *Id.*; Appellant's Reply Brief at 6 (italics in original). He maintains the trial court "had no reasonable basis" for granting the Commonwealth's objection to this cross-examination of Officer Rivera. *Id.* at 14. Thus, Appellant concludes the trial court's ruling "was prejudicial and cannot be dismissed as harmless beyond a reasonable doubt." *Id.* at 20-21.

In response, the Commonwealth emphasizes that "Appellant's claims rest on whether the [c]ourt erred by not allowing [defense] counsel to ask Officer Rivera if … Appellant threatened to shoot, kick, or punch Sergeant Garman or his family members and not allowing Officer Rivera to define

---

[4] The video from Officer Rivera's body camera was admitted into evidence without objection. *See* N.T. at 176-77; *see also id.* at 120 (Officer Rivera identifying Exhibit 1 as a disc containing footage from his body camera). The Commonwealth also submitted a written stipulation signed by the assistant district attorney and defense counsel "regarding the authenticity and admissibility" of the camera footage. *Id.* at 177 (trial court admitting the stipulation as Exhibit 2); *see also id.* at 100 (Commonwealth reading the stipulation and stating, "the body-worn camera recording of Officer Angel Rivera is an accurate and authentic depiction of the events that took place on December 12 of 2022 and is admissible in evidence").

assault for the jury." Commonwealth's Brief at 11. The Commonwealth states:

> The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination by whatever means necessary. **Commonwealth v. Akrie**, 159 A.3d 982, 988 (Pa. Super. 2017). A trial judge retains a wide latitude to place reasonable limitations on cross-examination "based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant […]." **Id.**

**Id.**

The Commonwealth maintains the trial court properly limited Appellant's "marginally relevant questions on cross-examination" and "did not inhibit trial counsel's ability to cross-examine Officer Rivera or call his credibility into question." **Id.** The Commonwealth further states that Appellant's issue is moot because defense counsel's "line of questioning was centered around" the elements of terroristic threats, and Appellant "ignores that the jury found Appellant not guilty" of terroristic threats.[5] **Id.** at 18.

*Record and Legal Analysis*

The Commonwealth presented two witnesses at trial: Officer Rivera and Sergeant Garman. Appellant did not present any witnesses.

Officer Rivera testified to responding to the call involving Appellant on December 12, 2022. Officer Rivera described Appellant as "upset," and

---

[5] The Commonwealth charged Appellant under 18 Pa.C.S. § 2706(a)(1), which states that a person "commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another."

"ha[ving] the odor of alcohol … all over his person," although Appellant "denied drinking [that day] … [and] said that he drank the night before." N.T. at 111. Officer Rivera explained that initially,

> the only thing we were informed about was that active domestic and that property was destroyed. It became apparent very quickly that … [Appellant's] mother, whose property was destroyed, wanted [no] charges brought. At this point[,] we were just investigating the incident, and through investigating the incident[, Appellant] made these concerning statements about his own life. And at that point, the [officers'] intent was to make sure that he got the help that he needed.

*Id.* at 113.

Officer Rivera relayed that officers "were trying to convince [Appellant] to go to the hospital voluntarily." *Id.* at 124. When Appellant expressed opposition, a co-responder was contacted for "guidance on if we could file for a [mental health commitment] based upon what we were hearing, not only on [the] scene with [Appellant], but also what was being heard at the house." *Id.* at 114. Officer Rivera stated:

> [Appellant] had been cooperative with us. He's openly talking with us. We were trying to keep him calm and show him that we had some care for him. So we allowed him to smoke a cigarette, sit in the warm police car. [I]t was cold out. [Appellant] advised he was cold. He didn't have a jacket on, so we allowed him to sit in the back of the car and have a cigarette.

*Id.* at 114-15.

After the co-responder advised officers to proceed with the mental health commitment, Officer Rivera "tried to explain the … process" to Appellant, who "said, no, I'm not going to the hospital." *Id.* at 115. Officer

- 8 -

Rivera testified that "[Appellant's] demeanor began to change from [being] upset and wanting assistance to more annoyed and very quickly became threatening." *Id.* at 116.

Officer Rivera further testified that Appellant began using "very … derogatory language" when "Sergeant Garman got on [the] scene." *Id.* at 117. Officer Rivera stated that when Appellant saw Sergeant Garman, he asked Officer Rivera, "[Y]our bitch ass boss, why is he doing this to me?" *Id.* When Officer Rivera asked Appellant who he was talking about, Appellant replied, "Your boss right there. I know him." *Id.* at 118.

Officer Rivera testified that when he transported Appellant to the hospital,

> there were threatening statements made [by Appellant], and I'm sure many people know it's not uncommon for an officer to receive just generalized threats about different things. I didn't really [have] any type of concern or alarm until I specifically heard [Appellant use] very specific threatening language … towards Sergeant Garman's family. … I had heard him already say he knew where Sergeant Garman swam, but then he started mentioning I know your wife and daughter. I know you guys like to go to the swimming pool in Manchester. Basically saying that's where [Sergeant Garman] goes. [Appellant] was saying things like be careful what swimming hole your pussy goes in because it will get wiped. Me and your wife jump off the same diving board. Like, I know where to find you.

*Id.* at 119-20. Officer Rivera also recounted Appellant "refer[ring] to [Sergeant Garman's] daughter, that he's going to find her tomorrow," and Appellant stating, "remember where you swim[,] bitch." *Id.* at 128.

Officer Rivera distinguished Appellant's comments about Sergeant Garman and his family from the "threats [Appellant] made regarding everything else[;] shamefully[,] that's just a part of the job sometimes." *Id.* at 130. Officer Rivera testified that Appellant's statements directed at Sergeant Garman and his family "are what caused specific alarm to me, those specific statements." *Id.* Officer Rivera stated that he "told [Sergeant Garman] about the statements that caused me [concern for Sergeant Garman] and his family." *Id.* at 164.[6]

Defense counsel attempted to cross-examine Officer Rivera about "the precise nature of the statements [Appellant] made in [Officer] Rivera's presence." *See* Appellant's Brief at 16 (citing N.T. at 143-46). The Commonwealth objected on the basis of relevance. N.T. at 144. Appellant refers to the following exchange:

BY [DEFENSE COUNSEL]:

Q. So in some of these threats [Appellant] was making, alleged threats to [Sergeant] Garman, he never said he was going to shoot Sergeant Garman?

A. No threats for shooting w[ere] made.

---

[6] Sergeant Garman corroborated Officer Rivera's testimony about the officers' response to the call. He testified that he did not have direct contact or speak with Appellant that day, but had past interactions with Appellant due to "prior calls for service." N.T. at 171. Sergeant Garman only learned "through the incident [that Appellant] attend[ed] the same pool" as him and his family. *Id.* at 172. He stated that he "decided to contact the York County District Attorney's Office for guidance," and the District Attorney "made the decision as to what charges would be filed." *Id.* at 174.

Q. No threat to his wife or shooting his wife?

A. No threat for shooting his wife.

Q. And no threat for shooting his daughter?

A. No threat for shooting his daughter.

Q. No threat to punch any of those people?

[COMMONWEALTH]: Your Honor, I'm going to object ….

THE COURT:      Basis for the objection[?]

[COMMONWEALTH]: … I'm going to object [as to] relevance. There's been no statements or allegations that [Appellant] has threatened to shoot or punch either [Sergeant Garman's] wife or daughter or [Sergeant Garman].  There's been no allegation or testimony regarding shooting[.]

THE COURT: Response[?]

[DEFENSE COUNSEL]: Well, I was starting with shooting, but one element of **terroristic threats** is the intent to threaten to assault, specifically assault somebody, and that is what I'm getting at is there was no specific threat to assault them and shooting, kicking, punching, and other forms of assault.

THE COURT: Well, I think it was a general allegation.  I'm going to look specifically – I am going to sustain the objection, and I'm going to sustain it under Rule 403 of the [R]ules of [E]vidence [permitting exclusion of relevant evidence for "prejudice, confusion, waste of time, or other reasons"].

Even if relevant, the [c]ourt may exclude relevant evidence [where the] probative value is outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. … I think when you start parsing out, oh, well, he didn't threaten to shoot him, I think that's going to create undue confusion as to what a threat is.  I think a threat is a threat, and it's up to the jury to make that determination, so I'm going sustain the objection.

[COMMONWEALTH]: Your Honor, I'd also like to note **in the jury instruction for terroristic threats** it specifically states, … [d]efendant communicated a threat to commit any crime of violence, specifically assault with intent to terrorize another;

however, **under the statute prohibiting terroristic threats**, it is unnecessary for an individual to specifically articulate the crime of violence that he or she intends to commit where the type of crime may be inferred from the nature of, context of, or circumstances surrounding the utterance of statement, which I think this is what we have here.

THE COURT: Yep.

[COMMONWEALTH]: Yes.

THE COURT: It's a general statement of violence, and to try to get it down, I think it's confusing the issue under Rule 403.

[DEFENSE COUNSEL]: Your Honor, it goes to the weight of admissibility -- the weight not the admissibility.

THE COURT: Again, I can exclude it, even if relevant, under Rule 403, and I am.

*Id.* at 143-46 (emphasis added).

Appellant claims the trial court erroneously precluded "questions [which] were important to establish whether [Appellant] made truly threatening statements." Appellant's Brief at 16 (citing N.T. at 143-44). According to Appellant, "the intended cross-examination would have shown that [Appellant] did not say anything that rose to the level of the kind of threat that would permit his convictions [*sic*] for the charged offenses." *Id.*

Notably, as the Commonwealth observes, defense counsel's "line of questioning was centered around" the elements of terroristic threats, and the jury found Appellant not guilty of terroristic threats. Commonwealth's Brief at 18. To the extent Appellant's argument applies to his harassment conviction and the element of Section 2709(a)(4) prohibiting communication of "any … threatening … words," we discern no error.

- 12 -

The trial court explained:

> Defense Counsel attempted to cross-examine Officer Rivera on things [Appellant] *did not* say. Counsel further attempted to have Officer Rivera define the crime of assault for the jury, essentially in an effort to have the Officer answer the question of, "was what [Appellant] said a threat of assault?" This would be asking a witness to decide a question of fact. A question of fact is for the jury to decide, and the jury alone. [Appellant] in this case was not charged with assault. This court, therefore, excluded that line of questioning pursuant to Pennsylvania Rule of Evidence 403, in order to avoid the danger of the jury confusing the issues.

TCO at 6-7 (italics in original).

Appellant claims, without any support, that the jury "signaled its focus on the subject of the rejected questioning by requesting a legal definition of 'threat' during deliberations." Appellant's Brief at 14. This claim is baseless. The jury was deliberating harassment and terroristic threats charges; they did not provide any context for their request.

When the jury asked the trial court for "the legal definition of a threat," the court conferred with counsel, who agreed to the definition provided in Black's Law Dictionary. N.T. at 236-38. The court advised the jury that counsel agreed to the definition, and read from Black's Law Dictionary:

> Threat, a communicated intent to inflict physical or other harm on any person or on property. A declaration of an intention to injure another or his property by some unlawful act. A declaration of intention or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act. A menace. Especially any menace of such a nature and extent as to unsettle the mind of the person on whom it operates and to take away from his acts that free and voluntary action which alone constitutes consent. A declaration of one's purpose or intention to work injury to the person, property, or rights of another with a view of restricting such person's freedom

of action. An avowed present determination or intent to injure presently or in the future. A statement may constitute a threat even though it is subject to a possible contingency in the maker's control. The prosecution must establish a true threat, which means a serious threat as distinguished from words uttered as mere political argument, idle talk, or jest. In determining whether words are uttered as a threat, the context in which they were spoken must be considered.

*Id.* at 238-39.

The jury subsequently resumed deliberations and found Appellant guilty of harassment and not guilty of terroristic threats. Neither the record nor the law support Appellant's claim that the trial court abused its discretion by granting the Commonwealth's request to limit defense counsel's cross-examination of Officer Rivera. **See Rogers**, 250 A.3d at 1216 (a defendant is not guaranteed cross-examination "in whatever way, and to whatever extent, the defense might wish") (citation and quotation marks omitted).

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/22/2024