J-S11008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY A. RIVERA | : | |
| | : | |
| Appellant | : | No. 801 EDA 2018 |

Appeal from the Judgment of Sentence October 2, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014339-2013,
CP-51-CR-0014340-2013, CP-51-CR-0014341-2013,
CP-51-CR-0014342-2013, CP-51-CR-0014348-2013,
CP-51-CR-0014349-2013

BEFORE:  SHOGAN, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 14, 2019**

Appellant, Anthony A. Rivera, appeals from the judgment of sentence entered October 2, 2017, following his conviction at a bench trial of three counts of attempted murder, six counts of aggravated assault, two counts of simple assault, and one count each of possession of an instrument of crime ("PIC"), burglary, disarming a law enforcement officer, and resisting arrest.[1] We affirm.

The trial court summarized the facts of the crimes as follows:

> Kiera Aviles and [Appellant] had been in a live-in relationship until September 20, 2013, when Ms. Aviles returned to her mother's home on Margaret Street in Philadelphia.  (N.T.

---

[1]  18 Pa.C.S. §§ 901, 2502, 2702, 2701, 907, 3502, 5104.1, and 5104, respectively.

4/10/2017, pp. 26-28, 43-44, 71-72). Around noon on Saturday, September 21st, [Appellant] showed up at Kiera's mom's house, had a brief conversation with Ms. Aviles and her mother, Monica Rivera, after which [Appellant] left. (N.T. 4/10/2017, pp. 30-32, 44). Later that afternoon, Kiera, her brother Joe, and her mom attended a sweet sixteen party for a neighbor at the local rec center. A couple of hours later, Kiera and her brother left the party and returned to her mother's house. (N.T. 4/10/2017, pp. 30-33, 45, 103-104).

At approximately 1:30 a.m., while the neighbors were cleaning up after the party, [Appellant] showed up at the rec center looking for Kiera. When Lorraine Munoz and Villanette Hernandez told [Appellant] that Kiera was not there anymore and that he had to leave, he became angry and started arguing with everyone. Lorraine's brother, Aaron Flores, then also told [Appellant] to leave, at which time [Appellant] pulled a gun from his waist and pointed it at Aaron Flores. Yvonne Flores, Aaron's mother, immediately jumped in and attempted to stop the argument, begging [Appellant] not to shoot, as [Appellant] then pointed the gun at her. Eventually, [Appellant] put the gun away and rode off on his bike. (N.T. 4/10/2017, pp. 71-76; 4/11/2017, pp. 6-10).

[Appellant] then continued on to Kiera Aviles' house, continuing his reign of terror. [Appellant] had telephoned Kiera after she had arrived home, threatening her and telling her that he is going to get what he is owed. (N.T. 4/10/2017, pp. 45-46). When Lorraine and Villanette arrived back on their block from the sweet sixteen party, Kiera and her brother Joe went outside to help them unpack their car when [Appellant] appeared. [Appellant] got off his bicycle, walked towards Kiera, when he turned away to load his gun, then turned back around and started shooting. (N.T. 4/10/2017, pp. 47-50, 79-81, 107-109; N.T. 4/11/2017, pp. 12-16). [Appellant] was about four feet away from Villanette Hernandez when he pointed the gun at her face and pulled the trigger three times. Fortunately the gun did not fire at that time, but merely "clicked." [Appellant] then turned to Kiera and shot at her. Kiera had quickly placed a board that she was carrying in front of her face and the bullet struck the board, but caused Kiera to fall to the ground. (N.T. 4/10/2017, pp. 81-82,108-109; 4/11/2017, pp. 12-18). Villanette ran towards the neighbor's house, and Kiera got up and ran across the street to her house, behind Lorraine and Joe. [Appellant] tried to break

through the door, which was being held by Kiera's brother. Kiera had run upstairs to her room to get her phone and call the police. Joe tried to get his dog but was shot in the abdomen by [Appellant], as [Appellant] shot through the window to get into the house. Joe managed to get up and he and Lorraine ran out the back door, dialing 911. (N.T. 4/10/2017, pp. 50, 81-86, 110-114). Meanwhile, [Appellant] climbed into the house through the window he had just shot, ran upstairs and kicked in Kiera's bedroom door. They started tussling and [Appellant] shot Ms. Aviles in the back. Once Kiera fell paralyzed to the floor, [Appellant] sat on her chest, pointed the gun and shot Kiera in the face. [Appellant] then got up and calmly walked out of the room. (N.T. 4/10/2017, pp. 49-53). [Appellant] then left the house.

Police Officer Timothy Wacker responded to a police radio call concerning the shootings, having received flash information. This patrolman saw [Appellant] around 4600 Paul Street, an area approximately five or six blocks from the shooting, and matching the flash information. Coming up behind [Appellant], Officer Wacker exited his patrol vehicle and asked [Appellant] to stop and shortly thereafter to put his hands against the wall. [Appellant] fled northbound on Frankford Avenue, chased by the officer. Upon approaching the north side of Margaret Street, [Appellant] turned around, pulled out a black revolver and pointed it at the officer. Taking cover behind a newsstand, the officer fired four shots at [Appellant] who again fled, this time east on Margaret Street into a vacant lot. (N.T. 4/11/2017, pp. 30-36). Cornered, [Appellant] again pointed the pistol at the officer, before he dropped the gun and climbed over the wall at the end of the property and ran north on Salmon Street. (N.T. 4/11/2017, pp. 30-36, 92-94). The officer chased [Appellant] into a dead-end alley, where he confronted [Appellant] and told him to put his hands on his head. [Appellant] complied, and the officer approached. While the officer attempted to put the handcuffs on [Appellant], [Appellant] suddenly took a swing at the officer and a fight ensued. They were wrestling with each other, [Appellant] grabbed the officer by his testicles and at the same time attempted to grab the officers' [sic] gun from it's [sic] holster with the other hand. The officer was able to get the pistol out and managed to shoot [Appellant] once. [Appellant] was arrested and taken to the hospital. [Appellant's] gun was found in the vacant lot. (N.T. 4/11/2017, pp. 33-41).

Trial Court Opinion, 7/3/18, at 3–6.

The trial court summarized the procedural history as follows:

On September 23, 2013, [Appellant] was arrested and charged with attempted murder, burglary, aggravated assault and related offenses. On October 10, 2013, [Appellant] was again arrested and charged with aggravated assault and similar charges from an associated incident. A grand jury indicted [Appellant] on four counts of attempted murder, eight counts of aggravated assault, two counts of simple assault, six counts of possessing the instruments of a crime, and one count each of burglary, resisting arrest, disarming a law enforcement officer, and terroristic threats.

A motion to suppress was heard and denied on October 16, 2014, with jury selection commencing immediately thereafter. Jury selection continued to the following day, during which [Appellant] assaulted his attorney in the courtroom, punching his counsel in the face. The trial was cut short, new counsel appointed and the matter continued. Following several mental health exams, a bench trial commenced April 10, 2017, with [Appellant] being found guilty on April 12, 2017. On October 2, 2017, [Appellant] was sentenced to an aggregate term of imprisonment of sixty three to one hundred and twenty-six years[2] followed by five years of probation. Post sentencing motions were filed[3] and

_____

[2] The trial court announced the correct aggregate sentence of seventy-three to 146 years of imprisonment at the sentencing hearing. N.T. (Sentencing), 10/2/17, at 27–30.

[3] Appellant's post-sentence motions challenged only the weight of the evidence and the length of his sentence. Post-Sentence Motions, 10/12/17, at ¶¶ 1, 2.

denied by operation of law,[4] with this timely appeal[5] to the Superior Court.[6]

Trial Court Opinion, 7/3/18, at 1–2. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I.   Is [Appellant] entitled to an Arrest of Judgment on any and all charges where the evidence is insufficient to establish guilt?

II.  Is [Appellant] entitled to a new trial on any and all charges where the greater weight of the evidence does not support a finding of guilt?

III. Is [Appellant] entitled to a new Sentencing Hearing as the result of abuse of discretion by the Sentencing Judge who imposed a maximum, consecutive sentence without due regard to all of the circumstances of the case and where the sentence imposed was an abuse of his discretion as being extremely harsh and excessive?

_____

[4] While the February 12, 2018 order denying post-sentence motions by operation of law failed to reference Philadelphia docket number CP-51-CR-0014342, the record is clear that post-sentence motions were filed in that case. Docket Entry 209. Moreover, Docket Entry 211 indicates that post-sentence motions were denied by operation of law on February 12, 2018 in Philadelphia docket number CP-51-CR-0014342.

[5] While Appellant filed a single notice of appeal containing all docket numbers, we need not quash the appeal. Our Supreme Court's decision on June 1, 2018, in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), which prospectively determined that separate notices of appeal must be filed when convictions arise from separate dockets, is not applicable because it was decided after the instant appeal was filed.

[6] Appellant filed his notice of appeal to this Court from the denial of post-sentence motions on February 12, 2018. Notice of Appeal, 3/14/18. In a criminal action, the appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. *Commonwealth v. Chamberlain*, 658 A.2d 395 (Pa. Super. 1995).

Appellant's Brief at 3.

Regarding the first issue raised, Appellant averred in his Pa.R.A.P. 1925(b) statement that the "evidence was insufficient as a matter of law to sustain verdicts of guilty on all charges." Pa.R.A.P. 1925(b) Statement, 5/25/18, at ¶ 3. In his statement of questions, he asserts that he is "entitled to an Arrest of Judgment on any and all charges where the evidence is insufficient to establish guilt." Appellant's Brief at 3. In the body of his brief, Appellant inquires, "Was [Appellant] attempting to commit Murder?" *Id.* at 7. He then contends that the evidence and inferences therefrom did not prove Appellant formulated the intent to kill, and he was merely acting on impulses. *Id.* at 8.

Appellant's vaguely worded statement of the issue is insufficient to challenge the sufficiency of the evidence. This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013)); *see also* Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). "Such specificity is of particular importance in cases where, as here, [the] appellant

was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Garland***, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. ***See Commonwealth v. Tyack***, 128 A.3d 254, 261 (Pa. Super. 2015) (finding appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Here, Appellant's non-specific claim in his Rule 1925 statement challenging the sufficiency of the evidence, which fails to state which crime allegedly was not proven by the Commonwealth, is waived. ***Tyack***, 128 A.3d at 261. However, even if we were to consider the argument in Appellant's brief that the Commonwealth did not prove that Appellant had the specific intent to kill, we would conclude this issue lacks merit and rely on the trial court's explanation in its Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 7/3/18, at 8–11. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "For a defendant to be found guilty of attempted murder, the Commonwealth must establish a specific intent to kill." ***Commonwealth v. Geathers***, 847 A.2d 730, 734 (Pa. Super. 2004) (citations omitted). The fact that Appellant used a deadly

weapon on a vital part of his victims' bodies is sufficient to prove the specific intent to kill them. ***See Commonwealth v. Sepulveda***, 855 A.2d 783, 788-89 (Pa. 2004) (shooting victim in the abdomen amounted to shooting him in a "vital part of the body" and was sufficient to prove appellant's intent to kill). Thus, even if not waived, we would affirm the trial court's denial of relief.

Appellant's second issue is a challenge to the weight of the evidence. Appellant contends that the evidence established only that he "acted from rage and not from premeditation" in shooting his three victims. Appellant's Brief at 10–11.

Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever

decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." ***Commonwealth v. Akrie***, 159 A.3d 982, 989 (Pa. Super. 2017). Appellant preserved his challenge by raising the issue in a post-sentence motion and including the issue in his Pa.R.A.P. 1925(b) statement.

In denying Appellant's request for a new trial based on the weight of the evidence, the trial court described the evidence in this case as "both compelling and substantial." Trial Court Opinion, 7/3/18, at 13. It further found the testimony of "the victims and police to be credible." ***Id.*** Here, the trial court rejected the weight-of-the-evidence claim, concluding that the Commonwealth's evidence was credible and supported the conclusion that Appellant shot all three victims in an attempt to kill them. ***Id. See Commonwealth v. King***, 959 A.2d 405 (Pa. Super. 2008) (citing ***Commonwealth v. Williams***, 854 A.2d 440, 445 (Pa. 2004) ("In criminal proceedings, the credibility of witnesses and weight of the evidence are determinations that lie solely with the trier of fact.")). The trial court's determination that the victims' and police officers' testimony was credible was not an abuse of discretion, and the verdict does not shock one's sense of justice.

Appellant's final claim is that the sentences imposed, in light of the fact that they were imposed consecutively, were harsh and excessive. Appellant's Brief at 15. This issue presents a challenge to the discretionary aspects of Appellant's sentence. Such challenges do not entitle an appellant to review as of right; rather, a challenge in this regard is properly viewed as a petition for allowance of appeal. 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987); *Commonwealth v. Sierra*, 752 A.2d 910 (Pa. Super. 2000).

An appellant challenging the discretionary aspects of his sentence must satisfy a four-part test. We evaluate: (1) whether Appellant filed a timely notice of appeal; (2) whether Appellant preserved the issue at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013). An appellant must articulate the reasons that the sentencing court's actions violated the sentencing code. *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010); *Sierra*, 752 A.2d at 912–913.

Here, Appellant filed a timely appeal, preserved the claim in a post-sentence motion, and the appellate brief contains a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary

aspects of a sentence pursuant to Pa.R.A.P. 2119(f). Appellant's Brief at 12–14. Accordingly, we must determine whether Appellant has raised a substantial question that the sentence is not appropriate under 42 Pa.C.S. § 9781(b). **Moury**, 992 A.2d at 170.

The determination of whether a particular issue raises a substantial question "is to be evaluated on a case-by-case basis. In order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011).

> The concise statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates. Additionally, the statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm. If the statement meets these requirements, we can decide whether a substantial question exists.

**Id.** at 1120 (quoting **Commonwealth v. Kiesel**, 854 A.2d 530, 532 (Pa.Super.2004)).

Herein, the Pa.R.A.P. 2119(f) statement fails even to argue that a substantial question is raised. Appellant's Brief at 12–14. In that statement, the sole reasons offered pursuant to Rule 2119 are that the sentence is excessive because the individual sentences were imposed consecutively. Appellant's Brief at 13. There is no mention of Sentencing Guidelines,

statutory ranges, or the general standards set forth in 42 Pa.C.S. § 9721 and the trial court's concomitant obligations.[7]

---

[7] The Commonwealth asserts that Appellant's sentencing issue "is unripe because the trial court failed to state on the record its reasons for the sentences imposed." Commonwealth Brief at 17. It then erroneously opines, *sans* case-law support, that such inaction rendered Appellant's sentence illegal. **Id.** First, Appellant's Rule 2119 Statement does not assert a substantial question based upon the trial court's failure to place reasons on the record for sentencing beyond the Sentencing Guidelines, it merely asserts an excessive sentence. Appellant's Brief at 13–14. Second, the Commonwealth is incorrect that such failure, if it had been asserted, resulted in an illegal sentence. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1041 (Pa. Super. 2013) ("A sentencing court's failure to follow the pertinent aspects of § 9721(b) do not result in an illegal sentence, but pertain to discretionary sentencing matters.") (citing **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010); **Commonwealth v. Cappellini**, 690 A.2d 1220, 1228 (Pa. Super. 1997) (claim that the court did not provide its reasons for sentencing constituted a discretionary sentencing claim)).

Moreover, the only issue Appellant raised regarding his sentence in his post-sentence motion averred that the trial court erred in imposing an excessive sentence. Post-Sentence Motion, 10/12/17, at ¶ 2. He raised no issue at the sentencing hearing. This Court stated in **Commonwealth v. Tejada**, 107 A.3d 788 (Pa. Super. 2015), "As [the appellant] preserved none of the arguments in support of his discretionary aspects of sentencing claim at sentencing or in his post-sentence motion, they are not subject to our review." **Id.** at 799 (citing **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1265 (Pa. Super. 2014); **Commonwealth v. Baker**, 72 A.3d 653, 662 (Pa. Super. 2013); and **Commonwealth v. Rush**, 959 A.2d 945, 949 (Pa. Super. 2008) ("for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court")). Finally, we observe that the only theory raised in Appellant's Pa.R.A.P. 1925(b) statement regarding his sentence was that the trial court imposed "an extremely harsh and excessive sentence." Pa.R.A.P. 1925(b) Statement, 5/25/18, at ¶ 5. **See** Pa.R.A.P. 1925(b)(4)(vii) (Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived; **Cf. Tejada**, 107 A.3d at 799 (although challenges to discretionary aspects of sentence were raised in Rule 1925(b) statement and trial court addressed them in its opinion, issues

We conclude that Appellant's Rule 2119 statement fails to raise a substantial question. While this Court has found that a substantial question is presented where there are numerous standard-range sentences ordered to be served consecutively, **Commonwealth v. Dodge**, 859 A.2d 771, 776 (Pa. Super. 2004), *vacated and remanded on other grounds*, 935 A.2d 1290 (Pa. 2007), in general, a trial court's exercise of discretion in imposing consecutive sentences is not viewed as raising a substantial question. **Commonwealth v. Mastromarino**, 2 A.3d 581, 586 (Pa. Super. 2010) (citing **Commonwealth v. Marts**, 889 A.2d 608, 611–612 (Pa. Super. 2005)). As we have emphasized, "the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears on its face to be an, excessive level **in light of the criminal conduct at issue in the case**." **Mastromarino**, 2 A.3d at 587 (emphasis added).

> The trial court summarized the criminal conduct herein as follows:
>
> [Appellant] shot at several people on the streets of Philadelphia, in their homes, and then attacked a police officer. The claim that this was a one-time event, a result of passion is belied by how [Appellant] hunted down his victim and was willing to shoot anyone who got in his way. Furthermore, clearly punching his attorney in the face during jury selection shows that [Appellant] has not learned his lesson, that his assaultive behavior was not the result of passion, but a purposeful decision when he does not get his way. He is going to do whatever he wants to do until he gets what he wants. [Appellant] was jealous and as a result he

---

were waived because the appellant failed to raise them at sentencing or in his post-sentence motion)).

- 13 -

went on a hunt—to kill his former lover and he was going to gun down anyone who tried to stop him. [Appellant] raided a sweet sixteen party, threatening at least two people with his gun looking for Kiera. Going back to her house he put his gun in the face of a neighbor and pulled the trigger three times. That the gun didn't fire was miraculous. [Appellant] chased his "girlfriend" across the street and when facing a door being held closed by Kiera's brother, he shot the brother. [Appellant] ran up the stairs with only revenge on his mind, struggled with his "beloved," shot and paralyzed her. [Appellant] then sat on her chest, making her look him in the face as he took the gun, put it in her face and shot her point blank. Escaping, he trie[d] to shoot a police officer at least twice. Mercifully for that officer, his gun did not fire. Only when [Appellant] no longer ha[d] a loaded weapon, does he appear to acquiesce. He then pretend[ed] to surrender, attack[ed] the officer and trie[d] to steal the officer's gun, so that he could shoot the patrolman. Finally, when going to trial, [Appellant] punche[d] his attorney in the face in the courtroom. [Appellant] has no respect for anyone or anything but himself. His actions have shown that he is not able to live in our society. The public needs to be protected from [Appellant].

Trial Court Opinion, 7/3/18, at 16–17.

In light of Appellant's only allegation in his post-sentence motion, Rule 1925(b) statement, and Pa.R.A.P. 2119 concise statement claiming an excessive sentence due to the imposition of consecutive sentences, in combination with the criminal conduct herein, we conclude Appellant's sentencing claim does not raise a substantial question for our review. Thus, we deny his petition for allowance of appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/19